UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANTONIO MOSLEY, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:19-CV-4181-CAP |
| INVESTIGATOR SHAWNA WADE, | |
| Defendant. | |

## **O R D E R**

This action is before the court on the defendant's motion for summary judgment [Doc. No. 37]. The plaintiff has filed a response in opposition [Doc. No. 42], and the defendant has filed a reply brief [Doc. No. 46]. Therefore, the matter is ripe for adjudication.

## I. Factual Background

On November 6, 2018, Todd Scimeca made an in-person complaint at the Coweta County Sheriff's Office that an unauthorized person used a stolen ATM card to make withdrawals from his Chase Bank account. Def.'s Statement of Material Facts at ¶ 2 [Doc. No. 37-2]. Two days later, the case was assigned to the defendant, an investigator employed by the Coweta County Sheriff's Office *Id.* at ¶ 3. The defendant spoke to Scimeca, who told her where the card was used and how much money was withdrawn. *Id.* at ¶

4.  Scimeca indicated that there were three unauthorized withdrawals, two at a Chase Bank branch in Riverdale and one at Shannon Mall in Union City. *Id.* at ¶ 5.  Scimeca provided the defendant with a name for his point of contact at Chase Bank branch in Newnan, Esra Riggins.  *Id.* at ¶ 6. Riggins told the defendant to contact Global Securities to obtain video footage of the ATM at the Riverdale branch.  *Id.* at ¶ 11.  The defendant was told by a Global Securities employee that a subpoena was needed to obtain the video footage.  *Id.* at ¶ 12.

The defendant sent a court order to Chase Bank Subpoena Compliance Department, which ordered it to provide "video footage that occurred at Chase bank enhanced ATM located at 7145 GA-85 Riverdale, GA 30274 at 242pm for fraudulent withdrawal of $2000.00 and another at 243 pm for $1000.00 using Chase debit car [redacted]1051 exp. 06/21," and "any bank information associated with the bank card listed above on 11/02/2018 during the times listed." Ex. 3 to Wade Dep. [Doc. No. 39-3].   In response, the defendant received a flash drive, a password, and instructions to access it. Wade Dep. at 32, 35 [Doc. No. 39].  In Exhibit B to the response in opposition to the motion for summary judgment, the plaintiff has submitted a cover letter from JPMorgan Chase Subpoena Processing addressed to the defendant and containing a password; also included in the plaintiff's Exhibit B are two pages of instructions on how to view the materials contained on the

drive.[1]  Ex. B to the Pl.'s Resp. to the M. for Summ. J. [Doc. No. 42-4]; Wade

Dep at 35 [Doc No. 39].   The instructions in the plaintiff's Exhibit B explain

that the video files on the drive were to be reviewed using the proprietary

software "RunReviewer.exe"; the instructions further explain that failure to

use the RunReviewer.exe would result in no time/date stamp and pixelated or

unclear video.  Ex. B to the Pl.'s Resp. to the M. for Summ. J. [Doc. No. 42-4].

The flash drive contained four ten-minute video clips and four still

video images.  Wade Dep. at 32, 35 [Doc. No. 39].  Three of the four still

---

[1] In the reply brief, the defendant objects to the court's consideration of
Exhibit B on the grounds that it is inadmissible hearsay.  Reply at 7 [Doc.
No. 46].  Hearsay is an out-of-court statement offered "to prove the truth of
the matter asserted in the statement." Fed. R. Evid. 801(c).  The letter and
two-page instructions do not meet that definition.  Moreover, a court may
consider a hearsay statement in reviewing a summary judgment motion "if
the statement could be reduced to admissible evidence at trial or reduced to
admissible form." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).
The origin of the three pages contained in Exhibit B is unclear.  However, it
should be a simple matter for the plaintiff to establish whether these are
documents obtained from the files of the Coweta County Sherriff's Office or
whether they were obtained from Chase Bank or some other source—and a
proper declaration should clear up any authentication issues.  The defendant
also contends that there is no evidence in the record to establish that she
received the two-page instructions the plaintiff includes in Exhibit B.
However, the defendant acknowledges in her deposition that there were
instructions included as to how to view the items on the flash drive.  Wade
Dep. at 35 [Doc. No. 39].  At the summary judgment stage, the court must
view the facts in the light most favorable to the party opposing the motion
and must draw all reasonable inferences in that party's favor. *Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To infer that
the two-page instructions were included with the cover letter sent to the
defendant in response to the subpoena is certainly reasonable.

images depicted the plaintiff; the fourth still image depicted the doors of the bank.  *Id.* at 33-34.  According to the defendant, parts of the video clips were pixelated or grainy.  *Id.*  The defendant acknowledges that the video clips showed a total nine or ten people interact with two different ATMs over the course of the recordings.  *Id.* at 37.  The defendant watched the video clips multiple times before issuing a warrant for the plaintiff's arrest.  *Id.* at 37. At the time she watched the videos, the defendant did not understand that the four videos depict four different camera angles over the same ten minutes of time.  *Id.* at 61.  She was also unaware that the four still images were the automatically generated initial frame of each of the four videos.  *Id.* at 38-39.

The defendant readily admits that the three still shots that depicted the plaintiff led her to focus on him as the suspect.  Wade Dep. at 43 [Doc. No. 39].  She acknowledges that without the screen shots of the plaintiff she would have had no probable cause to arrest the plaintiff.  *Id.*

In the arrest warrant application, the defendant stated that in response to the subpoena, "Chase's national subpoena processing department sent me the video footage as well as still pictures of the individual using the victims [sic] Chase bank card ending in 1051." Ex. 4 to Wade Dep. [Doc. No. 39-4].  She further stated that the video provided by Chase Bank was not good quality but that the still screen shots were very clear.  *Id.*;  Wade Dep. at 47 [Doc. No. 39].  Contrary to the defendant's assertion in the warrant

application, the still shots do not depict the plaintiff using a card ending in 1051; rather three of the four shots depict the plaintiff interacting with an ATM, neither a card nor the type of transaction he is completing is visible in any of the three still shots [Doc. No. 39-2]. Furthermore, Video Clip 3 clearly shows the plaintiff withdraw nothing more than a white piece of paper from the ATM; none of the four videos depict the plaintiff receiving cash from the ATM.  Ex. A. to the Pl.'s Resp. in Opposition to the M. for Summ. J. [Doc. No. 40]; Wade Dep. at 67 [Doc. No. 39].  To the contrary, Video Clip 4 shows another person, a man wearing a white cap, interact with the second ATM for over three minutes and remove cash from the machine twice.  *Id*.; Wade Dep. at 68-69 [Doc. No. 39].[2]  More importantly, the plaintiff did not use the same ATM as the man in the white cap, who was ultimately determined to be the thief.  *Id.* ; Wade Dep. at 60 [Doc. No. 39].  There is no evidence to indicate that the defendant took any steps to narrow down which of the two ATMs was used to unlawfully withdraw money from Scimeca's account.  In fact, the defendant blames Chase Bank for sending video from two different ATMs. Wade Dep. at 78 [Doc. No. 39].  Those two ATMs are readily visible in two of

---

[2] The video clips that have been submitted to the court do not contain the date and time stamp. However, evidence in the record indicates that the defendant, after following the instructions Chase Bank provided her in conjunction with the flash drive, was able to confirm that the man in the white hat was using the ATM beginning at 2:40:41 p.m. and completed those transactions.  *See* Exs. 4 and 5 to Wade Depo. [Doc. No. 37-3].

the four still shots the defendant stated were very clear [Doc. No. 39-2].  Yet there is no evidence to show that the defendant followed up with Chase Bank in order to determine which of the two machines was used to unlawfully withdraw cash using the card ending in 1051 prior to arresting the plaintiff.

As to the third unlawful use of Scimeca's card, the defendant learned from Chase Bank that it occurred at an ATM not affiliated with Chase Bank. Wade Dep. at 29 [Doc. No. 39].  She did no investigation to determine what ATM was used or whether video of that ATM use was available.  *Id.*

On the same date she obtained the arrest warrant, the defendant issued a BOLO (Be on the Look Out) with the still photos of the plaintiff. Wade Dep. at 57 [Doc. No. 39].  As a result, the defendant received a call from Lieutenant Stanford in Newnan identifying the plaintiff as the person in the BOLO photographs and his place of employment.  *Id.* at 58, Wade Dec. at ¶ 18 [Doc. No. 37-3].

The defendant requested that the Union City Police Department to send an officer to arrest the plaintiff at his place of employment.  Wade Dec. at ¶ 21 [Doc. No. 37-3].  The plaintiff was arrested and ultimately transported to the Coweta County Jail, where he was booked at 3:21 p.m.  *Id.* at ¶ 22; Ex. D to the Pl.'s Resp. in Opposition to the Def.'s M. Summ. J. [Doc. No. 42-6].  At the plaintiff's request, the defendant agreed to meet with him at the jail.  *Id.* at ¶ 23.  Before meeting with the plaintiff, the defendant

called Chase Bank to confirm that it had identified the person who used the stolen card.  *Id.* at ¶ 24.  The defendant was told that the information provided to her was linked to the card used, not just to the date and time of the transaction.  *Id.*

After talking with the plaintiff, the defendant sought to get more information from the bank, but it was closed for the day.  Wade Dec at ¶ 26 [Doc. No. 37-3].  Therefore, the plaintiff remained in jail overnight, and the following morning, the defendant sought technical help in re-watching the videos from Chase Bank.  Ex. D to the Pl.'s Resp. in Opposition to the Def.'s M. Summ. J. [Doc. No. 42-6]; Wade Dec. at ¶ 25, 27 [Doc. No. 37-3].  Upon this review of the video clips, she was able to tentatively rule out the plaintiff as a suspect, and she began to focus on another individual who was depicted in the video; it was this person who was ultimately determined to be the perpetrator.  *Id.* at ¶ 27.  The defendant again sought confirmation from Chase Bank that the plaintiff was the subject in the still photos and videos contained on the flash drive provided by Global Security.  *Id.* at ¶ 28.  At this point, she was informed that the video clips should have timestamps.  *Id.* at ¶ 29.  The defendant continued to seek confirmation from Chase Bank that the person in the screen shots, the plaintiff, was the person who used the stolen card.  *Id.* at ¶¶ 32-34.  Later the same day, the defendant received a call from Athena Moore of Chase Bank who told the defendant that the person

7

depicted in the screen shots was not the person who used the stolen card. *Id.* at ¶ 36. The defendant asked the judge who signed the arrest warrant to come to the jail to dismiss the warrant. *Id.* The defendant told both the plaintiff and his wife that Chase Bank had sent her the wrong information in response to the subpoena. *Id.* at ¶¶ 38-39. The warrant was dismissed, and the plaintiff was released from jail at 1:21 p.m. the day after he was arrested. *Id.* at ¶ 41; Ex. D to the Pl.'s Resp. in Opp. to the Def.'s M. Summ. J. [Doc. No. 42-6].

In her deposition, the defendant concedes that the individual who committed the theft is visible in the four videos. Wade Dep. at 77 [Doc. No. 39]. Nevertheless, at some point after arresting the plaintiff, the defendant informed Chase Bank that they sent her the wrong videos. *Id.* at 110. She likewise told the plaintiff's wife that Chase Bank sent the wrong videos. *Id.* at 87.

## II. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). The

moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* "Genuine" factual issues must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted).

### III. Analysis

The plaintiff asserts a single claim against the defendant pursuant to 42 U.S.C. § 1983—a claim for unlawful seizure in violation of the Fourth Amendment to the United States Constitution.  To sustain a § 1983 claim for an unlawful seizure, the seizure must have been unreasonable under the objective circumstances as they existed at the time.  *See Courson v. McMillian*, 939 F.2d 1479, 1493 (11th Cir. 1991) (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989)).  In this case, the defendant obtained a warrant for the plaintiff's arrest.  However, "a warrant violates the Fourth Amendment if the affidavit supporting [it] contains 'deliberate falsity or . . . reckless disregard' for the truth[ ]," which applies to both affirmative statements and omissions. *Elmore v. Fulton Cty. Sch. Dist.*, 605 F. App'x 906, 910 (11th Cir. 2015) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

The defendant has moved for summary judgment arguing that she had probable cause to obtain a warrant to arrest the plaintiff for card fraud and that there is no evidence that she acted with malice  Additionally, the defendant contends she is entitled to qualified immunity because at the very least, arguable probable cause existed for the plaintiff's arrest.

The plaintiff counters the motion for summary judgment by claiming that the facts of this case do not support a finding of probable cause and that malice can be inferred in the absence of probable cause.  Likewise, the plaintiff points to the absence of arguable probable cause to oppose the application of qualified immunity.

### A. Probable Cause

Because the court has determined that the defendant is not entitled to summary judgment as to the existence of arguable probable cause—a lesser standard than probable cause—she cannot be entitled to summary judgment as to the issue of probable cause.  *See infra.* Part III. C.

### B. Malice

The defendant argues that she did not act with malice.  Rather, she asserts that she made a good faith and reasonable mistake.  The defendant points to her own affidavit and deposition testimony to establish that at the time she applied for the arrest warrant, she had confidence in the reliability of the information provided by Chase Bank in response to her subpoena, and she had no reason to doubt that the screen shots of the plaintiff did not depict the person who used the stolen card identified in her subpoena. Wade Dec. at ¶ 16 [Doc. No. 37-3], Wade Dep. at 64, 75, 77 [Doc. No. 39].  In response to the motion for summary judgment, the plaintiff argues that the existence of

malice is a question of fact for the jury, and that the jury is entitled to infer malice if there is a want of probable cause.

The Eleventh Circuit has held that an officer's investigation must be viewed in terms of "an officer acting reasonably under the circumstances. . . ." *Kingsland v. City of Miami*, 382 F.3d 1220, 1228–29 (11th Cir. 2004) (citing *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)). "A police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest." *Id.* Importantly, in circumstances where the alleged probable cause is based on false information, the Eleventh Circuit has held that the complete lack of independent investigative work is noteworthy to the probable cause analysis. *Id.* at 1229.

In a Fourth Circuit case relied heavily upon by the Eleventh Circuit, a police officer made an arrest without heeding certain, easily obtained information; as a result, the Fourth Circuit held that the officer failed to act reasonably. *Kingsland* 382 F.3d at 1228-29 (citing *Sevigny*, 846 F.2d at 957). According to the Fourth Circuit, the officer "simply did not bother to do what any police officer acting reasonably in the circumstances would have done to clarify the factual situation" and that "[t]here was no exigency which prevented his doing so." *Sevigny,* 846 F.2d at 958.

Here the record establishes that the defendant took no steps to clarify whether the plaintiff was the person who unlawfully used the card at the

Chase Bank ATM on November 2, 2018 at 2:42 p.m. and 2:43 p.m.  She likewise made no effort to ascertain what ATM was used for the third unlawful withdrawal and obtain video from that source.  Therefore, the court cannot find as a matter of law that the defendant acted reasonably in the circumstances.  Accordingly, there remains a question of fact as to the existence of malice.

### C. Qualified Immunity

 "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).  To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." *City of W. Palm Beach*, 561 F.3d at 1291.  This two-step analysis may be done in whatever order is deemed most appropriate for the case. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Here, the defendant asserts that she was acting within her discretionary authority, and the plaintiff offers no challenge.  Furthermore, the parties agree that if arguable probable cause to arrest the plaintiff was present, the defendant is entitled to qualified immunity.  Def.'s Br. in Supp. of M. for Summ. J. at 19 [Doc. No. 37-1]; Pl.'s Resp. in Opp. to M. for Summ. J. at 10 [Doc. No. 42].  On the other hand, an arrest in the absence of arguable probable cause violates clearly established law, precluding qualified immunity.  *Skop v. City of Atlanta*, 485, F.3d 1130, 1144 (11th Cir. 2007).

Importantly, qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, (1986).  In this case, the plaintiff's theory of recovery is grounded on a failure to conduct an adequate investigation, i.e., that the defendant was plainly incompetent.  According to the Eleventh Circuit, law enforcement officers may make reasonable but mistaken judgments regarding probable cause, but qualified immunity does not shield "officers who unreasonably conclude that probable cause exists." *Skop*, 485 F.3d at 1137 (11th Cir. 2007).

In making an arrest affidavit or seeking an arrest warrant, "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).  An officer may not "choose to ignore information that has been offered to him or

14

her. . . [or] conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts. . . ." *Kingsland*, 382 F.3d at 1229.  Indeed, "[a] police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.  Reasonable avenues of investigation must be pursued . . . ."  *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986).  Although officers "need not conduct a 'mini-trial' before making an arrest, . . . probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (internal citations omitted).

The evidence on the record in this case establishes that the defendant did not understand the materials provided to her in response to her subpoena.  For example, she did not know that the four video clips were simply four camera angles depicting the same ten minutes at the two Chase Bank ATMs, and she did not know that the four still images on the flash drive were the first frame of each video clip.  While the defendant claims that she watched all four video clips, she did not match the date and timestamp on the videos with the times she knew the two unlawful withdrawals were made at the Chase Bank ATM.  Rather she focused on the plaintiff solely because he appeared in three of the four still images that were on the flash drive.

The defendant claims that the videos were unclear while the still shots were clear.  Yet she made no effort to contact Chase Bank for assistance in

viewing the video clips despite having a contact phone number on the cover letter that contained the password to the flash drive.  Furthermore, the defendant did almost no investigation with respect to the unlawful use of the card at the Shannon Mall ATM.  Once she learned that the third use of the card occurred at an ATM not affiliated with Chase Bank and that she could not obtain video from Chase Bank, she did nothing further.

While it is true that "[a]n officer does not have to take 'every conceivable step. . . at whatever cost, to eliminate the possibility of convicting an innocent person,'" *Williams v. City of Homestead, Fla.*, 206 F. App'x. 886, 888 (11th Cir. 2006) (quoting *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989)), the defendant here did nothing to determine which of the nine or ten people in the video withdrew money at 2:42 and 2:43 p.m. from one of two Chase Bank ATMs and made no effort to obtain video from the location of the third withdrawal in order to determine if any of the same individuals appeared at that ATM.  The defendant took no steps to clarify what the files contained on the flash drive represented until after she had the plaintiff arrested.  Once she took those steps, she was able to rule out the plaintiff as a suspect and identify the true perpetrator within a short time.

No reasonable investigator would have concluded that the plaintiff was the individual who unlawfully withdrew money using a stolen card on November 2, 2018 at 2:42 p.m. and 2:43 p.m. based on the materials received

16

from Chase Bank.  Therefore, the defendant lacked arguable probable cause to seek an arrest warrant charging the plaintiff with card fraud.  In the absence of arguable probable cause, the plaintiff's arrest was a violation of clearly established law.  *See Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297-98 (11th Cir. 2018).  Accordingly, the defendant is not entitled to qualified immunity.

## IV. Conclusion

Based on the foregoing, the defendant's motion for summary judgment [Doc. No. 37] is DENIED.  The joint proposed pretrial order is due thirty days from the date of this order.

SO ORDERED, this 5th day of November, 2020.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge